James E. Mulcahy, J.
This is a coram nobis application to vacate a judgment of conviction by confession for the crime of grand larceny in the second degree based on the defendant’s plea of guilty on February 5,1913 before Judge Edward Swann. The defendant was given a suspended sentence on February 11, 1913 but subsequently this sentence was revoked and he was sentenced to the Elmira Reformatory on May 2, 1913.
*229 The defendant desires to void such felony conviction and points out that the determination of these proceedings may affect his remaining in the United States. There is presently a matter before the United States Department of Naturalization and Immigration for the deportation of defendant from the United States on the grounds that being an alien and having been convicted of two separate felonies involving moral turpitude, he is deportable. The other crime was a conviction for manslaughter in the first degree in 1915.
The defendant contends that he was deprived of his right to counsel of his own choosing by the peremptory assignment of counsel by Judge Otto A. Rosalsky on January 6, 1913. He further alleges that he only pleaded guilty to disorderly conduct, instead of the crime of grand larceny in the second degree. He further avers that he was deprived of due process of law in that on February 10, 1913, in the absence of counsel he told the court (Swann, J.) that he was innocent but that the court never brought this fact to the attention of the court assigned counsel on February 11, 1913 so that a motion to withdraw the guilty plea could be formally made.
The material facts contained in the court files reveal the following: The petitioner was arrested for the theft of $16 from a woman’s pocketbook. On December 3, 1912 the defendant appeared in the Magistrates’ Court without counsel. There is a notation on the back of the Magistrates’ Court record that one Louis Halle, Esq., filed a notice of appearance on behalf of the defendant. An indictment containing two counts — grand larceny in the second degree and criminally receiving stolen property — was filed against the defendant. A plea of not guilty was entered on December 13, 1912 and the name of Louis Halle, who had been retained in the Magistrates’ Court was noted as attorney for defendant. On January 6, 1913, the case appeared on the Trial Calendar, Part I, before Judge Otto A. Rosalsky. A copy of the New York Law Journal for said date shows the name Louis Halle, as the attorney for the defendant. However, the Clerk’s Minutes, Part I, of January 6, 1913 indicate that the defendant went to trial on said indictment before Judge Otto A. Rosalsky and a jury, and his counsel was one Samuel Feldman. The trial was continued on January 7, 1913 and when the jurors could not agree they were discharged.
Several weeks later, on February 5,1913, the defendant, while represented by Samuel Feldman, appeared before Judge Swann and pleaded guilty to grand larceny in the second degree. On February 10, 1913 in the absence of said counsel, the defendant made a statement as to the circumstances under which the crime *230 was committed. Other witnesses testified on his behalf at this time. The following day, February 11,1913, the defendant, while represented by Mr. Feldman, was given a suspended sentence.
Thereafter, on May 2,1913, the defendant was brought before the court for a violation of probation and the court then imposed an Elmira Reformatory sentence. The defendant was again represented by Mr. Feldman. The basis for the violation was a false employment representation to the Probation Department, and the fact that the “ weeping mother ” who appeared before the court at plea and sentence was not his mother but was “ the wife of a notorious fence or thief, a receiver of stolen goods, who has posed in courts more than this time as the mother of any thief who happened to be caught” (Stenographer’s Minutes, May 2, 1913, p. 2).
On the corain nobis hearing, the petitioner testified that he obtained the legal services of Louis Halle, through the intervention of a friend, Morris Lupescu. However, when retained counsel, Mr. Halle, did not appear for trial before Judge Rosalsky, the defendant testified that Judge Rosalsky peremptorily assigned Samuel Feldman as his lawyer. He contends that he protested the assignment of counsel and asked for a delay but that Samuel Feldman told him that he was required to proceed to trial by direction of the court. The record is barren as to what actually took place at this time.
The court records show that when the guilty plea was entered by the defendant on February 5, 1913, Mr. Lupescu, the man who allegedly retained Mr. Halle, wTas present in court. Lupescu likewise testified in the defendant’s behalf on February 10, 1913 and sentence was adjourned until the following day. The defendant testified at the coram nobis hearing that in response to a demand by Mr. Feldman for money, he told Feldman that he would not bother Lupescu any more and that Lupescu had put up the money for Halle.
Regarding the contention of the right to counsel of one’s own choosing, this court is aware of the law that where “ a defendant appears by his own attorney, there is no power in the court to assign counsel at any stage of the proceedings.” (People v. Price, 262 N. Y. 410, 412.) The court records do not disclose the reason for the assignment of Mr. Feldman, and the defendant testified that this was done because Mr. Halle was not present. However it must be borne in mind that the January 6, 1913 trial before Judge Rosalsky ended on January 7, 1913 in a disagreement, and at no time thereafter did Mr. Halle ever appear for the defendant. The defendant testified that he did *231 not got in touch with Mr. Halle after the jury disagreement because Mr. Feldman had told him that he was his lawyer by assignment of the court, and he, the defendant, was C( scared stiff ” to do anything about it. He likewise attributes his failure to request other counsel from Judge Swann because of his fear of the courts. While the defendant claims he was “ seared stiff ”, he had no fear in foisting a woman on the court as his mother on the day of pleading and on the sentencing hearing on February 10, 1913. He indirectly blames Mr. Feldman for this situation.
It is clear to this court that regardless of what occurred on January 6,1913 to cause Mr. Feldman to take Mr. Halle’s place, the defendant willingly accepted the former as his counsel. He admits that he conferred with Mr. Feldman prior to his guilty plea. It cannot be gainsaid that Mr. Feldman knew all about the defendant’s case, and he had the people who were interested in the defendant’s welfare appear at the time of plea and sentence. The defendant’s course of conduct subsequent to January 6, 1913 leads to the inescapable conclusion that he voluntarily, intelligently and understandingly accepted Mr. Feldman as his counsel in place of Mr. Halle.
The above conclusion is buttressed by the fact that Mr. Halle was not retained as a personal choice of the defendant or his family. The choice was dictated by a friend and the defendant does not claim that he investigated Mr. Halle’s qualifications before accepting him as counsel or that he had any special predilection for Mr. Halle. It is more logical to assume that this young man of 17, wise in the ways of the world with experience derived as a pushcart peddler on the streets of New York, felt that he had a good lawyer in Feldman after the latter was able to obtain a disagreement from the jury. For all one knows, it might be that Mr. Halle had not been paid enough so he did not bother to represent the defendant.
The burden of proof is upon the defendant to establish some deprivation of his constitutional rights ‘ ‘ clearly and convincingly, by a preponderance of the credible evidence (People v. Chait, 7 A D 2d 399, 401, affd. 6 N Y 2d 855.)
This court was not impressed with the defendant’s credibility as a witness. His present difficulty with the Immigration Department certainly gives him a motive to fabricate and to tailor evidence to enable him to vacate the instant conviction. This defendant now comes forward with testimony nearly 50 years after the event, when the other participants are no longer available, and vividly describes how his constitutional rights have been violated. He places the onus of having deceived the *232 nisi prius court in representing a woman as Ms mother on the shoulders of his lawyer. As stated so ably by Mr. Justice Botein in People v. Chait (supra, p. 402): “ Testimony of this nature 40 years after the event, weighed in the light of the petitioner’s interest, desire and ability to recall the details, can be an unsatisfactory and unreliable basis upon which to vacate a judgment of long standing.” This court is not required to accept the defendant’s testimony as truthful, even though it is not directly contradicted (People v Lensky, 1 A D 2d 831).
The defendant’s unsupported claim that he was told that he was pleading to disorderly conduct and that the court records were erroneous where they show that he pleaded guilty to grand larceny in the second degree likewise does not overcome the presumption of regularity. His testimony in this respect fails to sustain the burden of proof imposed on him. “ The very existence of the judgment in and of itself gives rise to a strong presumption of regularity — a presumption that those charged with the administration of justice have performed their duties properly”. (People v. Chait, supra, p. 401; Frank, Coram Nobis, § 4.02, subd. [b].) In this respect, the court records of the defendant’s 1915 conviction for manslaughter in the first degree are illuminating. When the defendant’s “ pedigree ” was taken before sentence (Code Crim. Pro., § 485-a), the Clerk recorded the defendant’s answers to various questions. Among these were: “ Before Convicted 1913 Geni Sessions G. L. 2d Deg. Sent suspd & revoked — Elmira Reformatory.”
The other points raised by the defendant and his counsel in the motion papers and on the hearing do not merit coram nobis relief. The motion is denied.